UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

UNITED STATES OF AMERICA,

Plaintiff,

v.

RIBAL HAJJ-HUSSEIN,

Defendant.

Case No. 2:22-cr-00169-JCM-EJY

**REPORT AND RECOMMENDATION**

RE:  ECF No. 34

**I.    Introduction**.

Pending before the Court is Defendant's Motion to Suppress Statements for Impeachment Purposes and Request for *Jackson v. Denno* Hearing.  ECF No. 34.  The Court considered the Motion, the Government's Response (ECF No. 36), and Defendant's Reply (ECF. No. 37).  The Court also listened to the entirety of Defendant's tape recorded interview that took place in a Las Vegas Metropolitan Police Department ("Metro" or "LVMPD") vehicle on March 17, 2021  Exhibit 1 to Defendant's Motion, manually filed at ECF No. 35 (hereinafter "Def. Ex. 1").

Defendant argues his statements, previously found inadmissible in the Government's case in chief (ECF Nos. 28, 29), are also inadmissible for impeachment purposes because the statements were involuntary.  ECF No. 34 *citing Mincey v. Arizona*, 437 U.S. 385, 398 (1978) and *Henry v. Kernan*, 197 F.3d 1021, 1029 (9th Cir. 1999).  Defendant claims his statements were made "during a custodial interrogation" (an interview LVMPD "Detective Jacob requested" and Defendant "submitted" to) by three law enforcement officers (two from Metro and one from the U.S. Secret Service).  *Id*. at 4-5.  Defendant admits he was told the interview was being recorded, he was not under arrest, he was not in handcuffs during the interview, he was not going to jail on the day of the interview, law enforcement had a search warrant for his apartment and vehicle, and Defendant and law enforcement would be honest with each other and treat each other "like men."  *Id*. at 5 *quoting* Def. Ex. 1.  Defendant quotes law enforcement who, toward the end of the interview, summarized the information confirmed by Defendant (Defendant's company on whose behalf the loan was taken

1

1    had no employees and only a virtual office so there was no payroll to meet or rent to pay), explained

2    that Defendant might be charged with one or more crimes, and gave Defendant the opportunity to

3    tell his side of the story.  *Id*. at 6 *quoting* Def. Ex. 1 at 1:00.

4         Defendant contends "there was a high degree of police coercion" because Defendant was

5    "not advised of his *Miranda* rights," three "law enforcement personnel …confronted … [him] with

6    alleged evidence of guilt," and Defendant was not aware of "what criminal conduct he was accused

7    of."  *Id*. at 8.  Nonetheless, Defendant admits Metro Detective Jacob stated officers were speaking

8    with him because of "an Emergency Injury Disaster Loan[1]" and things recorded "in the loan …

9    [were] not true."  *Id*.  Defendant describes the number of officers present relating to execution of the

10   search warrants, the time of day when the interview took place, that Defendant was asked for keys

11   to his car, and Defendant was apparently searched for weapons.  *Id*. at 10.  Defendant claims he was

12   "isolated" when interviewed in the Metro vehicle, but that he "was not handcuffed … and the

13   Detective told him he was free to leave."  *Id.*

14        Defendant says the interview was "inherently coercive because Detective Jacob said "we are

15   going to ask you a couple of questions and we're going to be honest with each other …."  *Id*.

16   Defendant returns to a colloquy in which he asked if he is going to jail, and was told no, but when

17   he asked if he might go to jail next month, Detective Jacob responded he did not know and that the

18   decision was up to the prosecutor.  *Id*. at 11.  Defendant asked "what's the charge" and was told it

19   could be theft, perjury, or wire fraud.  *Id*. at 11-12.  Finally, Defendant asked what happens next to

20   which Detective Jacob told him he should be "cooperative" and that he might want to find someone

21   to give him advice.  *Id*. at 12.  Defendant sums up his argument saying the length of the interview (1

22   hour, 3 minutes), the location and "continuity" of the interview, and Defendant's maturity, education

23   (high school diploma), physical condition (none known), mental health (none known), and age (27)

24   all demonstrate a custodial interrogation.  *Id.* at 12-13.

25        The Government responds by agreeing that Defendant was interviewed by three law

26   enforcement officers in a Metro vehicle in which he was not handcuffed.  ECF No. 36 at 3.  The

27

28   [1]    The Emergency Injury Disaster Loan, which Defendant is alleged to have received, and is the gravamen of this
     case, is referred to herein as "EIDL."

1  Government further agrees Defendant was told "he would not be arrested that day," search warrants

2  were being executed, and the officers wanted to ask him questions about his EIDL. *Id*. The

3  Government correctly points out that before Defendant was asked any question about the EIDL,

4  Defendant offered information about the person who filled out the loan and did virtually everything

5  for Defendant's business. *Id*. *citing* Def. Ex. 1 at 02:23-3:11; 03:23-03:33; 04:00-06:34. During the

6  interview Defendant repeatedly denied knowing anything about the loan application, but admitted

7  docu-signing the loan approval and receiving the funds he used in various ways. *Id*. at 3-4 *citing*

8  Def. Ex. 1 at 11:34-16:26, 30:00-37:50. The Government agrees that toward the end of the interview

9  Defendant asked about what charges he might face and the officers responded as described by

10  Defendant. *Id*. at 4.

11  **II.    Discussion**

12         a.    Defendant's Statements During the Interview by Law Enforcement were Not
               Involuntary.
13

14         The parties do not dispute that no *Miranda* warning was administered to Defendant at any

15  time during his interview by law enforcement. However, this fact alone does not result in a finding

16  that Defendant's non-Mirandized statements are inadmissible for all purposes. Rather, the Court

17  must determine if Defendant's statements were involuntary because it is involuntary statements that

18  may be suppressed for all purposes including impeachment. *Pollard v. Galaza*, 290 F.3d 1030, 1033

19  (9th Cir. 202) *citing Michigan v. Harvey*. 494 U.S. 344, 351 (1990).

20         To determine whether Defendant's statements were involuntary, the Court considers whether

21  he was "overborne by the circumstances surrounding the giving of the confession, an inquiry that

22  takes into consideration the totality of all the surrounding circumstances—both the characteristics of

23  the accused and the details of the interrogation." *U.S. v. Preston*, 751 F.3d 1008, 1016 (9th Cir.

24  2014) *quoting*, in part*, Dickerson v. United States*, 530 U.S. 428, 434 (2000) *quoting Schneckloth v.*

25  *Bustamonte*, 412 U.S. 218, 226 (1973) (internal quote marks, backets, and emphasis omitted).

26         Each of these factors, in company with all of the surrounding circumstances—the
           duration and conditions of detention (if the confessor has been detained), the
27         manifest attitude of the police toward him, his physical and mental state, the diverse
           pressures which sap or sustain his powers of resistance and self-control—is
28         relevant.

1    *Id. quoting Culombe v. Connecticut*, 367 U.S. 568, 602 (1961).   Further, whether Defendant's

2    statements were voluntary "'is not limited to instances in which the claim is that police conduct was

3    inherently coercive,' … but 'applies equally when the interrogation techniques were improper only

4    because, in the particular circumstances of the case, the confession is unlikely to have been the

5    product of a free and rational will.'"   *Id. quoting Miller v. Fenton*, 474 U.S. 104, 110 (1985)

6    (additional citations omitted).   The Court may consider the defendant's "state of mind, the physical

7    environment in which the statements" were made, the tone of voice used by law enforcement, and

8    whether a defendant was "confused … shaken frightened, and crying."   *United States v. King*, Case

9    No. 20-cr-00344-JAD-DJA, 2023 WL 7906420, at *4 (D. Nev. Nov. 16, 2023) (citing *Pollard*, 290

10   F.3d at 1033-34).

11        The Court's  review of the interview demonstrates Defendant was immediately told he was

12   being recorded and why he was being interviewed.   Def. Ex. 1 at 00:34-00:36, 2:03-20:34.   The

13   recording also confirms law enforcement used a conversational tone throughout the interview, never

14   using a tone that would instill fear.   *See id*. generally.   Law enforcement did not threaten Defendant

15   with arrest.   *Id*.   Defendant was 27 at the time of the interview, professed to be "very good" at his

16   job of upselling time shares to existing owners, and stated he makes "very good" money ($80,000

17   to 100,000 a month).   *Id*. at 19:59-20:57; 30:34-30:45; 33:25-33:27.   Defendant told law enforcement

18   he has investments, including stocks.   *Id*. at 30:50-31-08.   At no time during the interview did

19   Defendant sound confused, shaken, or frightened.   *Id*. generally.   Defendant is never heard crying.

20   *Id*.   To the contrary, Defendant sounds reasonably comfortable throughout the interview.   *Id*.   There

21   is no dispute that Defendant has no known physical or mental health issues.   There is no allegation

22   that law enforcement ever displayed, let alone brandished, their weapons.

23        Defendant was asked about facts suggesting inaccurate information entered on the EIDL that

24   would increase the amount of the loan, but the officer's tone was at all times cordial.   *Id*. at 27:14-

25   27:45; 28:51-29:11.   Toward the end of the interview, law enforcement told Defendant he could be

26   charged with various crimes, but it was up to the prosecutor to decide with what he might be charged.

27   *Id*. at 44:52-45:08.   There was no aggressive or coercive tone during these exchanges.   *Id*.   Further,

28   law enforcement's tone did not change thereafter.   *Id*. 45:09–1:03:07.   *See also United States v.*

1   *Diggs*, 228 F.Supp.3d 1113, 1118 (D. Nev. 2017) *citing United States v. Bassignani*, 575 F.3d 879,

2   884 (9th Cir. 2009).  Nothing about Defendant's tone indicates he was under duress or felt pressured.

3   *See*, by way of example only, Def. Ex. 1 at 39:42-40:46; 41:59-42:09.  Instead, Defendant remained

4   calm and coherent throughout the interview.  *Id*., generally.  *See also King*, 2023 WL 7906420, at

5   *4.  Throughout the interview, law enforcement asked Defendant numerous questions about the

6   individual Defendant identified as suggesting, instituting, and completing the loan process.  *See*, *for*

7   *example*, Def. Ex. 1 at 27:46-28:48; 29:32-29:36; 29:43-29:47.

8          The Court recognizes the physical surroundings of Defendant's interview could support a

9   custodial interview finding.  Indeed, there is no dispute that the entirety of the one hour and three

10  minute interview occurred in a Metro vehicle, which is not a familiar surrounding.  However, there

11  is no indication that at any time during the interview Defendant was uncomfortable, ever sought to

12  end the interview, or ever wanted to end the interview.  *Id*., generally.  His tone and the tone of the

13  officers, together with all other factors the Court considers, belies the conclusion that Defendant was

14  overborne by being interviewed in a Metro vehicle.  *Bassignani*, 575 F.3d at 884 (quoting *United*

15  *States v. Kim,* 292 F.3d 969, 977 (9th Cir. 2002) ("isolating the defendant from the outside world …

16  largely neutralizes the familiarity of the location as a factor affirmatively undermining a finding of

17  coercion"); *United States v. Brodigan*, Case No. 2:17-cr-001013-KJD-PAL, 2019 WL 1811004, at

18  *14-15 (D. Nev. Jan. 14, 2019).  The same conclusion is reached with respect to the length of

19  Defendant's interview.  That the interview was barely over one hour does not transfer the totality of

20  all the surrounding circumstances into a custodial interrogation.  *Compare United States v. Saunders*,

21  Case No. 14-CR-00243-LHK-1, 2015 WL 9269968, at *8 (N.D. Cal. Dec. 21, 2015).

22         Defendant points to his age, and comments by law enforcement that he should and will

23  benefit from cooperating.  But, as the Ninth Circuit states: "It is not enough, even in the case of a

24  juvenile, that the police indicate that a cooperative attitude would be to [the] benefit of an accused

25  unless such remarks rise to the level of being threatening or coercive." *Juan H. v. Allen*, 408 F.3d

26  1262, 1273 (9th Cir. 2005) (internal citation and quote marks omitted).  Of course, Defendant, 27,

27  was not a juvenile, when interviewed, but a man who professed to be "very good" at upselling time

28  shares to existing customers making tens of thousands of dollars a month.

1    In sum, "[a] voluntary statement is "one that is the product of a rational intellect and a free

2    will." *United States v. Burleson*, Case No. 2:16-cr-00046-GMN-PAL, 2017 WL 8941310, at *4 (D.

3    Nev. Jan. 11, 2017) *citing Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011) (quoting *Medeiros v.*

4    *Shimoda*, 889 F.2d 819, 823 (9th Cir. 1989)); *Blackburn v. Alabama*, 361 U.S. 199, 208 (1960)).

5    Defendant's statements throughout the recorded interview evidence he was rational and a willing

6    participant in the discussion.  Indeed, the totality of the circumstances—"both the characteristics of

7    the … [Defendant] *and* the details of the interrogation"—demonstrates by a preponderance of the

8    evidence that Defendant's statements during the interview were voluntary.  *Id*. *citing United States*

9    *v. Preston*, 751 F.3d 1008, 1016 (9th Cir. 2014) (en banc) (quoting *Dickerson v. United States*, 530

10   U.S. 428, 434 (2000)) (italics in original).  There was nothing "manifestly outrageous" about law

11   enforcement's conduct during the interview.  *Id*. at *5 (collecting cases demonstrating bases for

12   suppression of a defendant's statements).

13   For all the reasons stated above, the Court finds Defendant's will was not overborne.  The

14   Court recommends Defendant's Motion to Suppress be denied.

15       b.    Defendant's Request for an Evidentiary Hearing is Denied.

16   As succinctly explained in *Burleson*:

17   In *United States v. Howell*, 231 F.3d 615 (9th Cir. 2000), the Ninth Circuit held that
     a court must hold an evidentiary hearing if the moving papers allege facts with
18   sufficient definiteness, clarity, and specificity to enable the court to conclude that
     relief must be granted if the facts alleged are proved. *Id.* at 620 (citing *United States*
19   *v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986); *United States v. Irwin*, 613 F.2d
     1182, 1187 (9th Cir. 1980); *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir.
20   1972)).  The court need not hold a hearing on defendant's pre-trial motion "merely
     because a defendant wants one.  Rather, the defendant must demonstrate that a
21   significant disputed factual issue exists such that a hearing is required." *Howell*,
     231 F.3d at 621 (internal citation omitted).  The determination of whether an
22   evidentiary hearing is appropriate rests in the reasoned discretion of the district
     court.  *United States v. Santora*, 600 F.2d 1317, 1320 (9th Cir.), *amended by* 609
23   F.2d 433 (1979).

24   2017 WL 8941310, at *4.  All Defendant states in support of an evidentiary hearing is that "through

25   this hearing, the [C]ourt is able to determine the factual context surrounding a defendant's

26   confession."  ECF No. 34 at 13.  However, the context surrounding Defendant's interview is not in

27   question.  The recording is clear and the entirety of what is said is understandable.  There is no

28   question about the location, whether Defendant was in handcuffs, who was present, who said what,

1    each speaker's tone of voice, the length of the interview, or Defendant's age, education, and

2    employment history.   The Court finds that Defendant's reason for an evidentiary hearing is

3    insufficient to support his request given the lack of a significant disputed factual issue regarding the

4    surroundings of the recorded interview.

5    **III.    Recommendation**.

6          IT IS HEREBY RECOMMENDED that Defendant's Motion to Suppress Statements for

7    Impeachment Purposes and Request for *Jackson v. Denno* Hearing (ECF No. 34) be DENIED.

8          Dated this 9th day of May, 2024.

9

10

11                                        _____
                                          ELAYNA J. YOUCHAH
12                                        UNITED STATES MAGISTRATE JUDGE

13

14                                          **NOTICE**

15          Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be

16   in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has

17   held that the courts of appeal may determine that an appeal has been waived due to the failure to file

18   objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also

19   held that (1) failure to file objections within the specified time and (2) failure to properly address

20   and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal

21   factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir.

22   1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

23

24

25

26

27

28