UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 222-CR-169 JCM (EJY) |
| Plaintiff(s), | ORDER |
| v. | |
| RIBAL HAJJ-HUSSEIN, | |
| Defendant(s). | |

Presently before the court is defendant Ribal Hajj-Hussein's motion to suppress statements for impeachment purposes and request for an evidentiary hearing. (ECF No. 34). The government filed a response (ECF No. 36), to which Hajj-Hussein replied (ECF No. 37).

Also before the court is Magistrate Judge Youchah's report and recommendation ("R&R") denying Hajj-Hussein's motion. (ECF No. 38). Hajj-Hussein filed objections (ECF No. 41), to which the government responded (ECF No. 43).

For the reasons set forth below, the court affirms Judge Youchah's R&R and denies Hajj-Hussein's motion to suppress and request for an evidentiary hearing.

**I.  Background**

The government charges Hajj-Hussein with wire fraud and money laundering. (ECF No. 1). Hajj-Hussein moves to suppress, for impeachment purposes, statements he made during a recorded interview with law enforcement, arguing that the statements were given involuntarily. (ECF No. 34).

Hajj-Hussein previously moved to suppress statements that he made to law enforcement on March 17, 2021. (ECF No. 24). The court found that the statements were inadmissible in the government's case-in-chief but denied (without prejudice) Hajj-Hussein's request to suppress the

1  statements for impeachment purposes.  (ECF No. 28, at 5, ECF No. 29).  Hajj-Hussein now
2  moves to suppress the statements for impeachment purposes and requests an evidentiary hearing.
3  (ECF No. 34).  The court summarizes the facts provided in Judge Youchah's R&R as necessary
4  to resolve Hajj-Hussein's motion.

5  On March 17, 2021, the Las Vegas Metropolitan Police Department ("LVMPD")
6  executed a search warrant on Hajj-Hussein's house, vehicle, and person, and interviewed him
7  while his home was being searched.  (ECF No. 34, at 5).  Detective Jacob of the LVMPD
8  informed Hajj-Hussein that they wanted to speak with him about "an Emergency Injury Disaster
9  Loan" and whether the information recorded in his loan application was true.[1]  (ECF No. 38, at
10 2).  Detective Jacob advised Hajj-Hussein that he was not under arrest, and Hajj-Hussein
11 submitted to an interview.  (*Id.*).  An LVMPD Senior Financial Analyst and a United States
12 Secret Service agent were also present for the interview.  (*Id.*; ECF No. 34, at 5).

13 The interrogation lasted an hour and three minutes.  (ECF No. 41, at 18).  Hajj-Hussein
14 was never advised of his *Miranda* rights and was never told—at any time during the interview—
15 that he could leave the vehicle.[2]  (Def. Ex. 1, ECF No. 35).  Hajj-Hussein answered Detective
16 Jacob's questions.  (*Id.*).  Not only did Hajj-Hussein comply with law enforcement's questions,
17 but he also confessed—without solicitation—that he had not applied for the loan himself but was
18 working with an accomplice ("F.R.").  (*Id*. at 02:37–04:47).  He also admitted to cutting off ties
19 with F.R. because he was a "scam artist."  (*Id.* at 06:53–07:33).

20 As the parties do not dispute that Hajj-Hussein was not *Mirandized* during the interview,
21 the issue before the court is whether the statements were nonetheless voluntary.  The magistrate
22 judge determined that the statements were voluntary, and this court agrees.

23 **II.  Legal Standard**

24 A party may file specific written objections to the findings and recommendations of a

---

[1] Hajj-Hussein states that "Detective Jacob requested that [he] submit to an interview," and then he sat in the detective's vehicle. (ECF No. 34, at 5).

[2] Although Judge Youchah concluded that Hajj-Hussein was not expressly informed he could exit the vehicle, Hajj-Hussein maintains in his objection to the R&R that he was given permission to do so. (ECF 41, at 16).

- 2 -

United States magistrate judge made pursuant to Local Rule IB 1-4. 28 U.S.C. § 636(b)(1)(B); LR IB 3-2. If a party timely objects to a magistrate judge's report and recommendation, the court must "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(B)(1). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

Pursuant to Local Rule IB 3-2(a), a party may object to the report and recommendation of a magistrate judge within fourteen (14) days from the date of service of the findings and recommendations. A party making objections must support those objections with points and authorities. LR IB 3-2(a). Responses to objections must be filed and served fourteen (14) days after service of the objection. (*Id.*).

### III.  Discussion

#### A.  Motion to Suppress

Hajj-Hussein first objects to Judge Youchah's finding that the statements he made during his interview with law enforcement were voluntary. (ECF No. 34). He argues the statements were involuntarily made because Judge Youchah "did not sufficiently account for the fact that law enforcement was searching [his] home and vehicle at the time of the interrogation," which made the interview "inherently coercive." (ECF No. 41, at 9). He maintains that extensive questioning in such a hostile environment, coupled with his alleged limited maturity and education, rendered the interview coercive. (ECF No. 34, at 8–13). The court disagrees.

After a review of the record, Judge Youchah concluded that Hajj-Hussein's statements were voluntary, and therefore admissible for impeachment purposes. (*See generally* ECF No. 38). Judge Youchah cites Hajj-Hussein's age and intelligence, his calm demeanor during the interview, the fact that he was immediately told that he was being recorded and why he was being interviewed, that law enforcement did not threaten arrest, and the overall tone and tenure of the interview. (*Id.*). She therefore recommended that Hajj-Hussein's motion to suppress be denied. (*Id.*). The court agrees with Judge Youchah.

"Statements obtained in violation of *Miranda* generally are inadmissible in the government's case-in-chief." *United States v. Gomez*, 725 F.3d 1121, 1125 (9th Cir. 2013).

1  "But a defendant's *voluntary* statements—even if obtained in violation of *Miranda*—are
2  admissible as impeachment evidence." *Id.* (emphasis added) (*citing Oregon v. Elstad*, 470 U.S.
3  298, 307 (1985)). The Supreme Court has explained its reasoning for this rule, stating that "[t]he
4  shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a
5  defense, free from the risk of confrontation with prior inconsistent utterances." *Harris v. New*
6  *York*, 401 U.S. 222, 224 (1971).

7  A voluntary statement is one that is "the product of a rational intellect and a free will."
8  *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011). To determine whether Hajj-Hussein's
9  statements were voluntary, the court evaluates the totality of the circumstances surrounding those
10  statements. *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003). There is no
11  "talismanic definition of voluntariness." *Id.* Instead, the court considers several factors, such as
12  the defendant's age, his intelligence, whether the defendant was advised of his constitutional
13  rights, the length and nature of the questioning, and the use of physical punishment. *Id.* at 1027.

14  A necessary predicate to finding a confession involuntary is that it was produced through
15  "coercive police activity." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). "[C]oercive
16  conduct by the police must have caused [the defendant] to make the statements." *Pollard v.*
17  *Galaza*, 290 F.3d 1030, 1033 (9th Cir. 2002). "A confession accompanied by physical violence
18  is per se involuntary, while one accompanied by psychological coercion is not." *Haswood*, 350
19  F.3d at 1027. Thus, the court weighs heavily the conduct of law enforcement during the
20  interview to assess whether coercive methods were used to obtain the statements.

21                         1.     *Nature of the Interview*

22  First, the court will consider the nature of the interview that Hajj-Hussein was subject to.
23  In *United States v. Hopkins*, the court held that a calm and conversational tone during an
24  interview contributes to a finding that statements were made voluntarily. 859 F. App'x 810, 812
25  (9th Cir. 2021). The court has also held that when interrogators use a threatening and forceful
26  tone, and the defendant is exhibiting clear signs of discomfort or fear, then the statements may be
27  deemed involuntary. *United States v. Walker*, 742 F. App'x 284, 285 (9th Cir. 2018).

28  Hajj-Hussein was immediately told why he was being interviewed and that he was being

1  recorded. (Def. Ex. 1, ECF No. 35, at 01:05–01:40). Throughout the interview, law
2  enforcement used a conversational and cordial tone with Hajj-Hussein. (*See generally id.*). At
3  no point during the interview did Hajj-Hussein object to being questioned, display discomfort, or
4  show signs of fear. (*Id.*).

5  Hajj-Hussein argues next that law enforcement employed coercive tactics by suggesting
6  that he would benefit from cooperation. (ECF No. 41, at 16–18). Detective Jacob highlighted
7  the importance of cooperation and stated, "We're going to be honest with each other and we are
8  going to treat each other as men in here." (ECF No. 35 at 01:38–01:43). However, the court
9  does not find these remarks, without more, to be coercive.

10  As Judge Youchah noted, the Ninth Circuit has clarified that law enforcement's
11  indication (even to a juvenile) that cooperation may benefit the defendant is not inherently
12  threatening or coercive. (ECF No. 38, at 5, *citing Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th
13  Cir. 2005) ("It is not enough, even in the case of a juvenile, that the police indicate that a
14  cooperative attitude would be to [the] benefit of an accused unless such remarks rise to the level
15  of being threatening or coercive.")). In this case, Hajj-Hussein was merely advised, in a cordial
16  manner, that answering questions could be advantageous to him. This does not meet the
17  standard for coercion.

18  *2.    Setting of the Interview*

19  The setting in which the interview took place is another factor that may be considered
20  under the totality of the circumstances. The court has noted that "isolating the defendant from
21  the outside world . . . largely neutralizes the familiarity of the location as a factor affirmatively
22  undermining a finding of coercion." *United States v. Kim*, 292 F.3d 969, 977 (9th Cir. 2002).
23  However, the court not only considers whether the defendant was "isolated from the outside
24  world" but also whether he was "prevented from contacting others." *United States v.*
25  *Bassignani*, 575 F.3d 879, 885 (9th Cir. 2009) (citing. *Kim*, 292 F.3d at 977).

26  Hajj-Hussein argues that the interview was "inherently coercive" because he was isolated
27  and because his home and vehicle were being searched during the interview. (ECF No. 41, at 9).
28  Even though there were no threats of physical violence and the tone of the interview was cordial,

1  Hajj-Hussein argues that the magistrate judge ignored the fact that he "could not go back into his
2  home or vehicle," and as such, there can be no dispute that he "was in custody." (*Id.*).

3  The magistrate judge did not err in concluding that Hajj-Hussein's statements were
4  nevertheless voluntary. As explained above, the court considers the totality of the
5  circumstances—one aspect of the interview alone is not determinative of voluntariness. In
6  *Bassignani*, the court found the defendant's statements voluntary because the defendant was
7  interviewed in a familiar place (the conference room in his workplace), was not prevented from
8  leaving the room or contacting others, and the officers did not prevent anyone else from coming
9  or going during the interview. 575 F.3d at 885. The interview occurred during the execution of a
10 search warrant, and the defendant was interviewed by more than one police officer in a closed
11 conference room. *Id.* at 881.

12 The facts of *Bassignani* are not unlike the facts of this case. It is clear from *Bassignani*
13 that the execution of a search warrant in tandem with the defendant's interview does not de facto
14 make an interview "inherently coercive." Like the defendant in *Bassignani*, though Hajj-Hussein
15 was interviewed in a closed space (a car) while a search warrant was executed. There was no
16 suggestion that he was prevented from contacting others.

17 This case is also vastly different from *Craighead*, the case cited by Hajj-Hussein. (ECF
18 No. 41, at 10). In *Craighead*, the police who executed the search warrant were wearing
19 protective gear, were heavily armed, and some even unholstered their firearms in the defendant's
20 presence. *U.S. v. Craighead*, 539 F.3d 1073, 1085 (9th Cir. 2008). One detective, who was
21 wearing a "raid vest" and visibly armed, even blocked the defendant's exit after the defendant
22 was brought into a storage room for interrogation. *Id.* at 1086. Such actions are not present in
23 this case.[3] Thus, even if a single factor weighed in favor of a finding of involuntariness, it is still
24 outweighed by all the other factors.

25                              3.     *Length of the Interview*

26 The length of the interrogation is another factor to be considered under the totality of the

---

28 [3] *Craighead* is also not directly applicable to this case as it deals with *Miranda* violations, not the voluntariness of statements.

- 6 -

1  circumstances. *Withrow v. Williams*, 507 U.S. 680, 693 (1993). The court does not find that the
2  length of the interview here weighs in favor of a finding of involuntariness. The interview lasted
3  approximately one hour. The Ninth Circuit has found interviews voluntary after an eight-hour
4  interrogation, and involuntary after a one-hour interrogation. *Compare Clark v. Murphy*, 331
5  F.3d 1062, 1073 (9th Cir. 2003), *with United States v. Tingle*, 658 F.2d 1332, 1333 (9th Cir.
6  1981). In both circumstances, additional factors contributed to the Circuit Court's ruling. It is
7  therefore clear that a one-hour interrogation, without more, is not inherently coercive.

           *4. Hajj-Hussein's Age and Intelligence*

9    Lastly, it is evident to the court that neither Hajj-Hussein's age nor his intelligence
10 weighs in favor of a finding that the interview was involuntary. Hajj-Hussein was 27 at the time
11 of the interview and claimed to be achieving substantial financial success through his business of
12 upselling timeshares to existing owners, stating that he was "very good" at his job. (ECF No. 35,
13 at 19:59–20:57). Furthermore, he mentioned engaging in various investments such as stocks, a
14 complicated activity that typically requires some average level of intelligence. (ECF No. 35, at
15 30:46–31:08). These facts collectively indicate that neither Hajj-Hussein's age nor intelligence
16 played a detrimental role in the voluntariness of his statements.

17   Accordingly, the court agrees with the magistrate judge's finding that, under the totality
18 of the circumstances, Hajj-Hussein's statements were voluntarily made, and therefore admissible
19 for impeachment purposes.

20     B. <u>*Jackson v. Denno* Hearing</u>

21   Hajj-Hussein also objects to Judge Youchah's finding that there is no contested issue of
22 fact that requires an evidentiary hearing. (ECF No. 41). Specifically, Hajj-Hussein argues that
23 the Magistrate Judge's R&R has disregarded the Ninth Circuit Court's holding that a *Jackson v.*
24 *Denno* hearing is required "when a defendant objects to the admission of a confession on
25 involuntariness grounds or where there is evidence in the record tending to show
26 involuntariness." (ECF No. 41, at 20). Hajj-Hussein further contends that under *Jackson*, the
27 trial court is required to make a full determination regarding the voluntariness of his statements.
28 (*Id.*). The court agrees with Judge Youchah's recommendation that no evidentiary hearing is

1  required because the factual record is not in dispute.

2  Hajj-Hussein requests an evidentiary hearing for the sole purpose of questioning the law
3  enforcement involved in his interrogation. (ECF No. 41, at 20). He argues that the officers
4  should be questioned regarding the facts and circumstances leading up to the interrogation, the
5  physical proximity between them and him, the details and timing of the interrogation, their
6  knowledge at the time of the interview, and whether they had their firearms exposed. (ECF No.
7  41, at 20–21).

8  A *Jackson* hearing is required when a defendant objects to the admission of a confession
9  on the grounds that it was involuntary or that there is evidence in the record that shows
10 involuntariness. *Jackson v. Denno*, 378 U.S. 368, 376–77 (1964). But the Supreme Court
11 explicitly stated that *Jackson* was not a case where "the facts concerning the circumstances
12 surrounding the confession are undisputed and the task is only to judge the voluntariness of the
13 confession based upon clearly established facts in accordance with proper constitutional
14 standards." *Id.* at 391.

15 In other words, the Supreme Court emphasized that the purpose of a *Jackson* hearing is
16 not merely to judge whether the defendant's statements were voluntary, but to uncover any
17 disputed circumstances surrounding the confession. Thus, the court is not required to grant a
18 defendant a hearing "merely because a defendant wants one." Instead, the defendant must prove
19 that a significant factual issue is in dispute. *Howell*, 231 F.3d at 621. The district court has
20 discretion in determining whether to grant the hearing. *United States v. Santora*, 600 F.2d 1317,
21 1320 (9th Cir.) *amended by* 609 F.2d 244 (1979).

22 In this case, the court agrees with Judge Youchah that there are no substantial facts in
23 dispute. (ECF No. 38, at 6–7). The court affirms Judge Youchah's finding that the context
24 surrounding Hajj-Hussein's interview is not in question. (*Id.* at 6). The audio recording of the
25 interview is clear, there are no uncertainties regarding the details of what transpired, and the
26 parties do not present differing narratives. (ECF Nos. 34, 36). As Judge Youchah notes, there
27 are no uncertainties as to the location, whether Hajj-Hussein was cuffed, the individuals present
28 during the interview, the content of the conversation, the duration of the interrogation, the tone

1 used, or details about Hajj-Hussein's age, education, or employment history.  (ECF No. 38, at 6–
2 7).  Thus, the court affirms Judge Youchah's decision and determines that Hajj-Hussein's
3 justification for an evidentiary hearing is inadequate to grant his request.

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Judge Youchah's R&R (ECF No. 38) is AFFIRMED.

IT IS FURTHER ORDERED that Hajj-Hussein's motion to suppress statements for impeachment purposes and request for an evidentiary hearing (ECF No. 34) is DENIED.

DATED July 29, 2024.

_____
UNITED STATES DISTRICT JUDGE